## No. 22-5699

# In the
# United States Court of Appeals
## for the Sixth Circuit

APRIL HEARD; DERRICKIA HEARD,

*Plaintiffs-Appellees,*

v.

SHELBY COUNTY, TN BOARD OF EDUCATION,

*Defendant,*

MONIQUE THOMAS,

*Defendant-Appellant.*

———————————————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis, No. 2:20-cv-02335.
The Honorable **Mark S. Norris**, Judge Presiding.

## BRIEF OF DEFENDANT-APPELLANT
## MONIQUE THOMAS

JAMIE L. MORTON
SHELBY COUNTY
BOARD OF EDUCATION
160 S. Hollywood Street
Suite 218
Memphis, TN 38103
(901) 416-3612

RANDY K. JONES
MINTZ, LEVIN, COHN,
FERRIS, GLOVKSY
& POPEO, P.C.
3580 Carmel Mountain Road
Suite 300
San Diego, CA 92130
(858) 314-1500

WHITNEY M. COSTIN
MINTZ, LEVIN, COHN,
FERRIS, GLOVKSY
& POPEO, P.C.
666 Third Avenue
25th Floor
New York, NY 10017
(212) 935-3000

*Counsel for Defendant-Appellant
Monique Thomas*


COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER


UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5699          Case Name: Heard v. Thomas

Name of counsel: Jamie Morton

Pursuant to 6th Cir. R. 26.1, Monique Thomas
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

   No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ August 25, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Jamie Morton

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

**6th Cir. R. 26.1**
**DISCLOSURE OF CORPORATE AFFILIATIONS**
**AND FINANCIAL INTEREST**

(a)    **Parties Required to Make Disclosure**.    With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

## **TABLE OF CONTENTS**

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..........................................v

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF ISSUES .....................................................................................2

STATEMENT OF THE CASE..................................................................................3

I.      RELEVANT FACTS ....................................................................................3

II.     PROCEDURAL HISTORY ..........................................................................7

III.    RULING FOR REVIEW .............................................................................11

SUMMARY OF THE ARGUMENT ....................................................................13

ARGUMENT .........................................................................................................16

I.      WHETHER SHE IS A LAW ENFORCEMENT OFFICER OR
        SCHOOL ADMINISTRATOR, SRO THOMAS DID NOT
        VIOLATE DERRICKA HEARD'S CONSTITUTIONAL RIGHTS..........17

        A.      Applying the School Administrator Standard, SRO Thomas Did
                Not Violate Derricka Heard's Fourth Amendment Rights ................19

        B.      Applying the Law Enforcement Standard, SRO Thomas Did
                Not Violate Derricka Heard's Fourth Amendment Rights ................24

        C.      SRO Thomas Did Not Violate Derricka Heard's Fourteenth
                Amendment Rights.............................................................................27

II.     DERRICKA HEARD CANNOT SHOW A CLEARLY
        ESTABLISHED CONSTITUTIONAL RIGHT ..........................................33

CONCLUSION .....................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beard v. Whitmore Lake School District*,
    402 F.3d 598 (6th Cir. 2005) ......................................................34, 36

*Burgess v. Fisher*,
    735 F.3d 462 (6th Cir. 2013) ............................................................17

*Crochran v. Columbus City Schs.*,
    748 Fed. Appx. 682 (6th Cir. 2018)........................................19, 20, 21

*Davis v. Gallagher*,
    951 F.3d 743 (6th Cir. 2020) ............................................................35

*Domingo v. Kowalski*,
    810 F.3d 403 (6th Cir. 2016) ........................................29, 30, 31, 32

*E.H. v. Neal*,
    No. 3:16-cv-02605, 2018 US Dist LEXIS 93001
    (M.D. Tenn. Apr. 16, 2018).............................................................21

*E.W. v. Detroit Pub. Sch. Dist.*,
    No. 20-1790, 2022 WL 837496 (6th Cir. Mar. 21, 2022) .....................13, 16, 25

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*,
    455 F.3d 690 (6th Cir. 2006) ......................................................18, 20

*Gohl v. Livonia Pub. Schs.*,
    134 F. Supp. 3d. 1066 (E.D. Mich. 2015) ..................................18, 20

*Gohl v. Livonia Public Schools School District*,
    836 F.3d 672 (6th Cir. 2016) ......................................................28, 29

*Graham v. Connor*,
    490 U.S. 386 (1989)..........................................................................18

*Gregory v. W. Clermont Local Sch. Dist. Bd. of Educ.*,
    414 F Supp 3d 1064 (S.D. Ohio 2019).............................................20

*H.M. v. Bd. of Educ.*,
   2015 WL 4624629 (S.D. Ohio) ...........................................................................21

*Humphrey v Mabry*,
   482 F3d 840 (6th Cir. 2007) ...............................................................................21

*Johnson v. Buddy's Bar-B-Q*,
   No. 1:13-cv-254, 2015 WL 1954454 (E.D. Tenn. Apr. 29, 2015) .....................35

*Lillard v. Shelby Cnty. Bd. of Educ.*,
   76 F.3d 716 (6th Cir. 1996) ........................................................................*passim*

*Lyons v. City of Xenia*,
   417 F.3d 565 (6th Cir. 2005) .......................................................................24, 33

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ......................................................................................1, 10

*Nolan v. Memphis City Schs.*,
   589 F.3d 257 (6th Cir. 2009) .......................................................................18, 20

*Norton v. Stille*,
   526 Fed. Appx. 509 (6th Cir. 2013) .............................................................39, 40

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ............................................................................................17

*Stanton v. Sims*,
   571 U.S. 3 (2013) ...............................................................................................17

*Williams v. Morgan*,
   652 Fed. Appx. 365 (6th Cir. 2016) .......................................................35, 38, 39

**Statutes**

28 U.S.C. § 1291 ...................................................................................................1, 10

28 U.S.C. § 1331 .......................................................................................................1

28 U.S.C. § 1441 .......................................................................................................1

42 U.S.C. § 1983 ..............................................................................................*passim*

**Rules of Court**

Fed. R. App. P. 4 ................................................................................................1

Fed. R. App. P. 32 ......................................................................................42, 46

Fed. R. of Pro. 12(b)(6) ........................................................................................8

## <u>STATEMENT IN SUPPORT OF ORAL ARGUMENT</u>

SRO Thomas requests oral argument.

This appeal involves an unsettled and developing issue in the Sixth Circuit concerning the application of qualified immunity to the actions of school resource officers trained by police but employed by school districts.  Determining under what circumstances such school resource officers should be entitled to qualified immunity, and specifically what standard should be employed in making such an assessment, is a matter of public importance given the strong federal policy underlying qualified immunity.

The decision by the Sixth Circuit will undoubtedly impact rulings on similar matters within this Circuit, and quite possibly elsewhere as courts around the country have reached divergent conclusions on this issue.

## STATEMENT OF JURISDICTION

(A)  The District Court for the Western District of Tennessee at Memphis has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1441 because Appellee's Complaint, originally filed in the Circuit Court of Shelby County, Tennessee, raises questions under Federal law, including claims for alleged civil rights violations brought pursuant to 42 U.S.C. § 1983.

(B)  Pursuant to 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the United States Court of Appeals for the Sixth Circuit has jurisdiction over Appellant's appeal of the District Court's denial of qualified immunity.

(C)  This Appeal is timely under Fed. R. App. P. 4 because the Order appealed from [R. 109] was entered July 28, 2022, and Appellant's Notice of Appeal was filed August 10, 2022.

(D)  Pursuant to 28 U.S.C. § 1291 and *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985), the District Court's denial of qualified immunity constitutes a final order which may be immediately appealed.

## <u>STATEMENT OF ISSUES</u>

1.    Did the District Court err in denying Appellant's Motion for Summary
       Judgment on the Issue of Qualified Immunity?

2.    Did the District Court apply the correct legal standard(s) in analyzing
       Appellant's claim for Qualified Immunity?

## STATEMENT OF THE CASE

### I.    RELEVANT FACTS

At the time of the subject incident, Plaintiff Derricka Heard was a student at Kirby High School.  (Deposition of Derricka Heard ("D.H. Dep."), R. 73-2, Page ID # 596, ln. 6-7).  She had attended Kirby High School since ninth grade.  (*Id*. at Page ID # 596, ln. 9-1).  She turned eighteen years old in November 2021.  (*Id*. at Page ID # 595, ln. 22-25).  April Heard is Derricka Heard's mother.  (*Id*. at Page ID # 606, ln 17-18).

At the time of the incident, Defendant Monique Thomas ("SRO Thomas") was a school resource officer at Kirby High School.  (Deposition of Monique Thomas ("Thomas Dep."), R. 73-3, Page ID # 698, ln. 11-13).  Prior to becoming a school resource officer, SRO Thomas completed thirteen weeks of training with the Memphis Police Department.  (Thomas Dep., R. 73-3, Page ID # 711, ln. 24 – Page ID # 712, ln. 6).  Her police academy training was five days a week from 8:00 a.m. to 4:00 p.m.  (*Id*. at Page ID # 712, ln. 13-20).  SRO Thomas received training on use of force at the police academy, including training on the ASP baton, pepper spray, deadly force, and empty hand technique.  (*Id*. at Page ID # 713, ln. 4-15).  As a school resource officer, she carries pepper spray and an ASP baton.  (*Id*. at Page ID # 748, ln. 11-14).

At Kirby High School, use of force by a school resource officer (which formerly included SRO Thomas) is governed by the use of force continuum contained in Shelby County Schools' Safety and Security Operation Procedures. (Ex. 7 to Thomas Dep.  ("Thomas Dep. Ex. 7"), R. 73-3, Page ID # 777).  SRO Thomas was employed by Shelby County Board of Education (the "School Board"). (Thomas Dep., R. 73-3, Page ID # 698, ln. 8-13).

On March 26, 2019, Derricka Heard bumped into another student, T.W., in the cafeteria.  (D.H. Dep., R. 73-2, Page ID # 619, ln. 11-18).  At the time of the altercation in the cafeteria, Derricka Heard and T.W. were involved in a dispute regarding Derricka Heard's refusal to let T.W. wear her jacket.  (*Id*. at Page ID # 621, ln. 15 – Page ID # 622, ln. 4).  They had argued earlier that week.  (*Id*. at Page ID # 622, ln. 9).  T.W. reported to SRO Thomas that Derricka Heard had assaulted her. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22).  SRO Thomas approached Derricka Heard in the lunch line and asked her to come talk with her after Derricka Heard got food.  (*Id*. at Page ID # 716, ln. 3-8).  Derricka Heard then came out of the lunch line and approached SRO Thomas.  (*Id*. at Page ID # 716, ln. 9-12).  SRO Thomas attempted to talk with Derricka Heard regarding T.W.'s allegation that Derricka Heard had assaulted her.  (*Id.* at Page ID # 716, ln. 12 – Page ID # 717, ln. 5).  During the discussion about T.W.'s assault allegation, Derricka Heard started to walk away from SRO Thomas.  (*Id*. at Page ID # 715, ln. 11-14; Page ID # 716, ln.

24 – Page ID # 717, ln. 5).  SRO Thomas stopped her and told Derricka Heard to go to the principal's office.  (*Id*. at Page ID # 717, ln. 10-13).

Derricka Heard walked up the ramp toward the principal's office, and SRO Thomas followed behind her.  (*Id*. at Page ID # 717, ln. 16-25).  Derricka Heard was on her cell phone talking loudly and using profanity.  (*Id*. at Page ID # 717, ln. 16-25; Deposition of Charles Frank ("Frank Dep."), R. 73-5, Page ID # 888, ln. 20-23; Exhibit 1 to Deposition of Meridth Taylor ("Taylor Dep. Ex. 1", R. 73-7. Page ID # 1046).  SRO Thomas instructed Derricka Heard to stop using profanity because class was in session and she was being disruptive.  (Thomas Dep., R. 73-3, Page ID # 717, ln. 18-20).  Coach Frank stopped Derricka Heard and told her to go into a room known as the satellite office, located off the main hallway at Kirby High School.  (D.H. Dep., R. 73-2, Page ID # 625, ln. 14 – Page ID # 626, ln. 19; Frank Dep., R. 73-5, Page ID # 889, ln. 1-2).  SRO Thomas followed Derricka Heard into the room and instructed Derricka Heard to put down her cell phone, but Derricka Heard did not comply.  (Frank Dep., R. 73-5, Page ID # 889, ln. 3).  Derricka Heard made verbal threats against SRO Thomas and began to start taking off her jacket.  (Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24); (Frank Dep., R. 73-5, Page ID # 894, ln. 19-21 ("And Ms. Heard said, 'You better get out of my mother-fucking face before I forget you an adult.'")); (Taylor Dep. Ex. 1, R. 73-7. Page ID # 1046 ("The student called the police officer a bitch and said she was going to beat her ass. . . .

The student took off her jacket and pointed in the officer's face.")).  Derricka Heard was holding her phone in the air and screaming.  (D.H. Dep., R. 73-2, Page ID # 629, ln. 14 – Page ID # 630, ln. 21; Ex. A to Notice of Removal ("Complaint"), R. 1-1, Page ID # 10, ¶ 18.)

As a result of Derricka Heard's threatening and disobedient behavior and in order to gain control of the situation, SRO Thomas struck Derricka Heard using a closed empty hand technique (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11), a permissible use of force under the applicable use of force continuum.  (Thomas Dep. Ex. 7, R. 73-3, Page ID # 777) (providing "Empty Hand Control (Soft/Hard)" as a permissible use of force and stating that the use of force continuum is "a dynamic continuum where an officer can be justified in instantly escalating from the lowest level of force to deadly force without having to stop and utilize each and every step in between.") SRO Thomas used the empty hand control technique to defend herself. (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11, Page ID # 729, ln. 11-16; Page ID # 734, ln. 1-8).  SRO Thomas did not have sufficient time to consider other possible uses of force.  (Thomas Dep., R. 73-3, Page ID # 748, ln. 3-19).  SRO Thomas left the room and immediately contacted her supervisors.   (Thomas Response to Interrogatory No. 6, R. 62-7, Page ID # 452).

April Heard arrived at school a short time later and observed droplets of blood on the floor and on Derricka Heard's face and clothes.  (Heard Dep., R. 73-4, Page

ID # 803, ln. 15-23).  Memphis Police Department issued a judicial summons to Derricka Heard for assault as a result of her conduct, which April Heard and Derricka Heard both signed.  (Heard Dep., R. 73-4, Page ID # 806, ln. 13 – Page ID # 807, ln. 27; D.H. Dep., R. 73-2, Page ID # 637, ln. 15 – Page ID # 639, ln. 15).  April Heard drove Derricka Heard to the hospital, where Derricka Heard received one or more stitches in her lip.  (Heard Dep., R. 73-4, Page ID # 808, ln. 15-24).  Derricka Heard received no further medical treatment.  (*Id.* at Page ID # 818, ln. 17-23).

Derricka Heard enjoys watching movies and shopping.  (D.H. Dep*.,* R. 73-2, Page ID # 596, ln. 19 – Page ID # 597, ln. 16).  At the time of her deposition, she was working as a resident assistant at a nursing home.  (*Id*. at Page ID # 606, ln. 21 – Page ID # 607, ln. 9).  Derricka Heard took both the ACT and SAT and had plans to attend the University of Memphis in the fall.  (*Id*. at Page ID # 599, ln. 8 – Page ID # 600, ln 7).  Derricka Heard wants to be an attorney.  (*Id*. at Page ID # 596, ln. 9-1).  Derricka Heard's mother describes her as "real outgoing[,] . . . business-minded and oriented." (Heard Dep., R. 73-4, Page ID # 791, ln. 22-25).  She said Derricka Heard "love[s] joking and just having fun." (*Id*.)

## II.   PROCEDURAL HISTORY

Plaintiffs filed their Complaint in the Circuit Court of Shelby County Tennessee on March 25, 2020 (Complaint, R. 1-1).  Plaintiffs initially brought claims against SRO Thomas and the School Board for alleged violation of Plaintiff Derricka

Heard's federal rights pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law. (*Id.*) Counsel for the School Board accepted service of the state court summons and complaint on April 17, 2020.  (Ex. B to Notice of Removal ("Summons"), R. 1-2). The School Board filed Notice of Removal on May 8, 2020.  ("Notice of Removal", R. 1).  At the time of removal, SRO Thomas had not been served.

On May 15, 2020, the School Board filed its Motion to Dismiss Pursuant to Federal Rule of Procedure 12(b)(6), arguing, among other things, that (a) the School Board was entitled to immunity under Tennessee's Governmental Tort Liability Act ("GTLA") and (b) Plaintiffs failed to state a claim against the School Board for relief which could be granted pursuant to Section 1983 ("Motion to Dismiss", R. 6, 6-1). Plaintiffs' response to the School Board's Motion to Dismiss was due on June 12, 2020.  Local Rule 12.1(b).  Plaintiffs did not file a response to the School Board's Motion to Dismiss.  Instead of filing a response, Plaintiffs filed a Motion for Leave to Amend their Complaint ("Motion to Amend") on June 15, 2020, three days *after* their deadline to respond to the School Board's Motion to Dismiss.  (Motion to Amend, R. 8).  In their Motion to Amend, Plaintiffs "acknowledge[d] that certain state law claims should be dismissed" against the School Board and sought to amend the Complaint "to add and clarify allegations in an abundance of caution to more fully set forth Plaintiffs' 42 U.S.C. § 1983 claims." (Motion to Amend, R. 8, Page ID # 57).

On August 14, 2020, the District Court granted the School Board's Motion to Dismiss and denied Plaintiffs' late-filed Motion to Amend. ("Order Granting School Board's Motion to Dismiss", R. 13). Among other things, the Court found that Plaintiffs' proposed Amended Complaint "failed to cure the original complaint's deficiencies." (Order Granting School Board's Motion to Dismiss, R. 13, Page ID # 93). The Court also entered a judgment of dismissal with prejudice as to the School Board ("Judgement of Dismissal", R. 14). SRO Thomas, the sole remaining defendant, was served on November 13, 2020 ("Summons to Monique Taylor", R. 39). SRO Thomas timely filed her Motion for Summary Judgment ("Motion for SJ") on December 15, 2021 after the conclusion of discovery. (Motion for SJ, R. 62).

On March 25, 2022, Defendant filed a Motion to Remove April Heard as Parent and Next Friend because Defendant Derricka Heard had reached eighteen years of age and April Heard no longer had authority to pursue her daughter's claims. (Motion to Remove April Heard, R. 90). Though Plaintiffs did not dispute that Derricka Heard had reached the age of majority under Tennessee law, they objected to the removal of April Heard as parent and next friend. (Response to Motion to Remove April Heard, R. 97). Over Plaintiffs' objection, the District Court granted Defendant's motion and directed the Clerk to remove April Heard as Parent and Next

Friend of Derricka Heard, who would be substituted as a Plaintiff.    (Order Substituting Derricka Heard, R. 105).

Trial was originally set for April 25, 2022.  (Setting Letter, R. 43).  On April 11, 2022, Plaintiffs filed a Motion to Continue Trial.  (Motion to Continue Trial, R. 100).  The District Court granted Plaintiffs' Motion, setting trial for September 26, 2022.  (Second Setting Letter, R. 103).

On July 28, 2022, the Court entered its Order Granting in Part and Denying in Part SRO Thomas' Motion for Summary Judgment ("SJ Order," SJ Order, R. 109), wherein the Court granted SRO Thomas' Motion for Summary Judgment as to April Heard's claim for intentional infliction of emotional distress[1] and Derricka Heard's claim for violation of the First Amendment under Section 1983 and denied the motion as to the remaining claims, including SRO Thomas' claims of qualified immunity.  (SJ Order, R. 109, Page ID #s 1174-1178).

On August 10, 2022, SRO Thomas filed Notice of Appeal of the SJ Order's denial of qualified immunity, which constitutes an immediately appealable "final decision" within the meaning of 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  On August 16, 2022, Plaintiffs filed a Motion for Certificate of Appealability, seeking the District Court's certification of several additional issues

---

[1] As the District Court noted, the dismissed IIED claim was April Heard's "only remaining claim." (SJ Order, R. 109, Page ID # 1169).

for appeal. SRO Thomas filed an Unopposed Motion to Stay Proceedings Pending Appeal on August 22, 2022 (Motion to Stay, R. 113), and the parties filed a Joint Motion to Continue Trial on September 6, 2022 (Joint Motion to Continue Trial, R. 117).

On September 16, 2022, the District Court entered an order granting the Parties' Joint Motion to Continue Trial and SRO Thomas' Motion to Stay Proceedings Pending Appeal. (Order granting Joint Motion to Continue Trial and Motion to Stay, Denying Cert. of Appealability, R. 119). In the same order, the District Court denied Plaintiffs' Motion for Certificate of Appealability, finding that such certification would be inappropriate. (*Id*.).

## III.    RULING FOR REVIEW

In its SJ Order, the District Court denied SRO Thomas' qualified immunity claim with respect to Derricka Heard's Fourth and Fourteenth Amendment claims. SRO Thomas appeals that determination.

At summary judgment, the parties argued that SRO Thomas' conduct should be analyzed under the "reasonable officer" standard applicable to claims of excessive force applied by law enforcement (Motion for SJ Memo, R. 62-1, Page ID #s 387-391; Plaintiff's Response in Opposition to Motion for SJ ("Opp. to Motion for SJ"), R. 73, Page ID #s 562-566). However, the District Court instead determined that SRO Thomas was acting as a school administrator as opposed to a

11

law enforcement officer.  Then, the District Court applied a "search and seizure" standard applicable to public school officials when analyzing Derricka Heard's Fourth Amendment claim (SJ Order, R. 109, Page ID # 1175, n. 7).

Applying the "search and seizure" standard to Derricka Heard's Fourth Amendment claim, the District Court found that a reasonable jury could find that an unjustified seizure occurred and that SRO Thomas' actions were not reasonably related to her objective.  (*Id*. at Page ID # 1176).  The District Court also found that, even though Plaintiffs nor the Court identified any case law on point, "SRO Thomas was on notice that she could not strike a non-threating, non-cooperative student." (*Id*. at Page ID #s 1177-1178).  In reaching its conclusions, the District Court noted that it was unable to locate precedent applying the "search and seizure" standard to excessive force claims. (SJ Order, R. 109, Page ID # 1175, n. 7).

The District Court also declined to grant qualified immunity to SRO Thomas on Derricka Heard's Fourteenth Amendment Claim.  Though SRO Thomas argued that she was entitled to summary judgment as to all of Derricka Heard's federal claims brought pursuant to 42 U.S.C. § 1983, including her claim for violation of her rights under the Fourteenth Amendment, (Memorandum of Law in Support of Motion for Summary Judgment, R. 62-1, PageID # 375, 387; Reply in Support of Motion for Summary Judgment, R. 75, PageID # 1054-1055), the District Court did not address SRO Thomas' qualified immunity as to that claim. Rather, the District

Court addressed the underlying merits of that claim, finding that SRO Thomas'
efforts to "gain control of the situation" in light of Derricka Heard's "threatening
and disobedient behavior" did not constitute a pedagogical justification for her
conduct. (SJ Order, R. 109, PageID # 1173). The District Court also found that a
reasonable jury could find that SRO Thomas used excessive force under the
circumstances, that she did not act in good faith, and that Derricka Heard suffered a
serious injury. (*Id*.) SRO Thomas appeals the District Court's findings and its denial
of summary judgment as to that claim.

## SUMMARY OF THE ARGUMENT

Government employees like SRO Thomas "are immune from liability under
42 U.S.C. § 1983 unless the plaintiff establishes both (1) a violation of a
constitutional right, and (2) that 'the right at issue was clearly established when the
event occurred such that a reasonable officer would have known that [their] conduct
violated it.'" *E.W. v. Detroit Pub. Sch. Dist.*, No. 20-1790, 2022 WL 837496, at *3
(6th Cir. Mar. 21, 2022) (quoting *Martin v. City of Broadview Heights*, 712 F.3d
951, 957 (6th Cir. 2013)). Derricka Heard has not met that standard.

SRO Thomas is entitled to qualified immunity as to Derricka Heard's Section
1983 claims for violation of her rights under the Fourth and Fourteenth Amendments
because Derricka Heard cannot establish that SRO Thomas violated her clearly
established constitutional rights. Derricka Heard was accused of assaulting another

student.  When confronted, she became disruptive, speaking loudly on her cellular phone and yelling obscenities in the hallway.  She threatened SRO Thomas, taking off her jacket and making verbal threats of violence to SRO Thomas.  In an effort to maintain order in the school building and ensure the safety of herself as well as staff and students, SRO Thomas struck Derricka Heard with her hand one time.  She then contacted her supervisors and left the room.

Whether SRO Thomas is viewed as a school administrator (as the District Court found) or a law enforcement officer, her conduct was reasonable under the circumstances and did not violate Derricka Heard's Fourth Amendment rights. Likewise, SRO Thomas' actions were permissible in scope and in furtherance of a valid pedagogical purpose.  She did not act with malice, sadism or an intent to hurt. Therefore, SRO Thomas did not violate Derricka Heard's right to substantive due process under the Fourteenth Amendment.

Moreover, even if Derricka Heard could establish a constitutional violation, SRO Thomas is still entitled to qualified immunity because it was not clearly established at the time of the incident that SRO Thomas' actions would violate Derricka Heard's constitutional rights.  SRO Thomas' use of force was clearly not gratuitous because Derricka Heard was neither compliant nor non-threatening. Neither Derricka Heard nor the District Court identified any case law that would have put SRO Thomas on notice that her conduct under the circumstances would

violate Derricka Heard's rights under the Fourth or Fourteenth Amendments, and SRO Thomas submits that none exists.  For the reasons explained herein, SRO Thomas is entitled to qualified immunity, and summary judgment should be entered in her favor.

## ARGUMENT[2]

SRO Thomas appeals the District Court's denial of her motion for summary judgment as to Derricka Heard's Section 1983 claims for alleged violation of her rights under the Fourth and Fourteenth Amendments. (SJ Order, R. 109, Page ID #s 1174, 1178).[3] The District Court erred in denying summary judgment as to Derricka Heard's Section 1983 claims because SRO Thomas is entitled to qualified immunity, particularly when analyzed under the applicable legal standard. The Court should review the District Court's denial of summary judgment de novo, reviewing facts in the light most favorable to the nonmovant. *Id*.

Government employees like SRO Thomas "are immune from liability under 42 U.S.C. § 1983 unless the plaintiff establishes both (1) a violation of a constitutional right, and (2) that 'the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated it." *E.W. v. Detroit Pub. Sch. Dist.*, No. 20-1790, 2022 WL 837496, at *3 (6th Cir. Mar. 21, 2022) (quoting *Martin v. City of Broadview Heights*, 712 F.3d

---

[2] This Court has jurisdiction over this interlocutory order because SRO Thomas's appeal involves questions of law. *See E.W. v. Detroit Pub. Sch. Dist.*, No. 20-1790, 2022 WL 837496, at *3 (6th Cir. Mar. 21, 2022).

[3] The District Court granted SRO Thomas' Motion as to Derricka Heard's First Amendment claim, finding SRO Thomas is entitled to qualified immunity as to that claim. (SJ Order, R. 109, Page ID # 1179). Consequently, only the Fourth and Fourteenth Amendment claims are at issue in this appeal.

951, 957 (6th Cir. 2013)).   "'Qualified immunity gives government officials

breathing room to make reasonable but mistaken judgments,'" and "protects 'all but

the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*,

571 U.S. 3, 5 (2013).   "Because qualified immunity is 'an immunity from suit rather

than a mere defense to liability[,] it is effectively lost if a case is erroneously

permitted to go to trial.'"   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).   The Supreme Court of the United

States has repeatedly [] "stressed the importance of resolving immunity questions at

the earliest possible stage in litigation." *Id.*   at 232 (quoting *Hunter v. Bryant*, 502

U.S. 224, 227 (1991).

## I.     WHETHER SHE IS A LAW ENFORCEMENT OFFICER OR SCHOOL ADMINISTRATOR, SRO THOMAS DID NOT VIOLATE DERRICKA HEARD'S CONSTITUTIONAL RIGHTS.

Derricka Heard claims that SRO Thomas used "excessive force" in violation

of Derricka Heard's rights under the Fourth and Fourteenth Amendments

(Complaint, R. 1-1, Page ID #s 12-13).   However, Derricka Heard has failed as a

matter of law to demonstrate that SRO Thomas' actions at issue raise to the level of

"excessive" in violation of any constitutionally protected right.

Excessive force claims can be raised under the either the Fourth or Fourteenth

Amendments or both, depending upon the circumstances. *Burgess v. Fisher*, 735

F.3d 462, 472 (6th Cir. 2013).   In the case of law enforcement officials, the Supreme

Court has held that excessive force claims are "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989). By contrast, courts in the Sixth Circuit have analyzed allegations of excessive force by a teacher or school administrator under the Due Process Clause of the Fourteenth Amendment rather than under the Fourth Amendment. *See, e.g., Gohl v. Livonia Pub. Schs.*, 134 F. Supp. 3d. 1066, 1083 (E.D. Mich. 2015) *aff'd Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016); *Nolan v. Memphis City Schs.*, 589 F.3d 257, 269 (6th Cir. 2009); *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (same); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724–725 (6th Cir. 1996). Thus, in order to assess whether excessive force was utilized in violation of an individual's constitutionally protected rights, it must first be determined whether the acting individual in question is a law enforcement officer or school administrator.

The District Court held that "[a]s a school resource officer, [SRO Thomas] is more like a teacher or school administrator than a traditional police officer." (SJ Order, R. 109, Page ID # 1172, n. 9). In support of that conclusion, the District Court cited SRO Thomas' status as an employee of the school district. (*Id*.) The District Court noted that school resource officer cases in the Sixth Circuit more often

18

involve "a police officer employed by a county police department and assigned to the public school." (*Id.*)

Accordingly, if SRO Thomas were considered a school administrator as the District Court determined, her alleged "excessive force" should be analyzed under the Fourteenth Amendment – not the Fourth Amendment.  Only if she were determined to be a law enforcement officer would the Fourth Amendment be implicated.  Regardless of which standard applies though, SRO Thomas is entitled to qualified immunity because she did not utilize excessive force under the Fourth or Fourteenth Amendments, let alone engage in any unconstitutional search and seizure.

### A.    Applying the School Administrator Standard, SRO Thomas Did Not Violate Derricka Heard's Fourth Amendment Rights.

Should this Court find (as the District Court did) that SRO Thomas should be treated as a teacher or school administrator rather than as a law enforcement officer, SRO Thomas submits that the Fourth Amendment does not apply to Derricka Heard's claim of excessive force, and that claim should be dismissed outright.[4]

In its analysis of Derricka Heard's claim under the Fourth Amendment, the District Court applied the "search and seizure" analysis for public school officials

---

[4]  Indeed, the District Court itself acknowledged that "the Fourth Amendment's safeguard against unreasonable and excessive force protects citizens from excessive force by *law enforcement officers*." (SJ Order, R. 109, Page ID # 1175, n. 7) (emphasis in original; citations omitted).

utilized in *Crochran* (SJ Order, R. 109, Page ID 1175-77) (citing *Crochran v. Columbus City Schs.*, 748 Fed. Appx. 682 (6th Cir. 2018)). But to the extent the instant case involves the alleged use of excessive force, the "search and seizure" standard cannot apply. (*Id.*)[5] Accordingly, the Fourth Amendment analysis concerning "searches and seizures" should not apply to Derricka Heard's excessive force claim.

*Crochran*, which is unpublished and does not involve allegations of excessive force, should not upend this conclusion. Instead, this Court should look to its long-standing precedent wherein it has applied the "shocks-the-conscience" standard under the Fourteenth Amendment to determine whether liability exists for claims of excessive force asserted against school administrators. *Gohl v. Livonia Pub. Schs.*, 134 F. Supp. 3d 1066, 1083 (E.D. Mich. 2015) *aff'd Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016); *Nolan v. Memphis City Schs.*, 589 F.3d 257, 269 (6th Cir. 2009); *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (same); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724–725 (6th Cir. 1996).[6] Indeed, the Sixth Circuit has recognized that a "search

---

[5] The District Court further acknowledged that it was "not aware of any precedent, nor has any been cited by the Parties, that applies a Fourth Amendment excessive force analysis to a school administrator." *Id.* at 1175, n. 7.

[6] Notably, several district courts in the Sixth Circuit have outright rejected the notion that the Fourth Amendment "search and seizure" standard could apply against school administrators in instances of alleged excessive force. *See Gregory v. W. Clermont Local Sch. Dist. Bd. of Educ.*, 414 F Supp 3d 1064, 1077 (S.D. Ohio 2019)

and seizure" analysis is separate from an excessive force analysis.  *Humphrey v Mabry*, 482 F3d 840, 846 (6th Cir 2007).

Even under the "search and seizure" standard, SRO Thomas is still entitled to qualified immunity because she did not violate Derricka Heard's Fourth Amendment rights under any standard.  "[T]o qualify as a seizure in the school context, the limitation on the student's freedom of movement must significantly exceed that inherent in every-day, compulsory attendance." *Crochran v. Columbus City Schs.*, 748 Fed. Appx. 682, 685 (6th Cir. 2018) *(*quoting *Couture v. Bd. of Educ. of the Albuquerque Pub. Schs.*, 535 F.3d 1243, 1252-53 (10th Cir. 2008)).  "The reasonableness of a seizure is a matter of law, which we review *de novo*." *Crochran*, 748 Fed. Appx. 682 at 685 (citing *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009)).  *"*In determining whether the seizure was unreasonable, the court must consider: (1) whether the seizure was justified at its inception; and (2) whether the seizure was permissible in its scope." *Id*.  (citing *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1252-53 (10th Cir. 2008).

---

("Defendant is correct that an excessive use of force claim involving force exerted by a public school official against a child is treated as a Fourteenth Amendment substantive due process claim, subject to the stringent 'shocks the conscience' standard.'"); *E.H. v. Neal*, No. 3:16-cv-02605, 2018 US Dist LEXIS 93001 (M.D. Tenn. Apr. 16, 2018) (collecting cases); *H.M. v. Bd. of Educ.*, 2015 WL 4624629, at *4 (S.D. Ohio) (collecting cases).

Assuming for purposes of this appeal that a seizure occurred, such seizure was not unreasonable. Derricka Heard was accused of assaulting another student. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22). She refused to cooperate with SRO Thomas' efforts to discuss the allegations, so SRO Thomas instructed her to go to the office to see the Principal Lowry. (Thomas Dep., R. 73-3, Page ID # 715-717). She created such a disruption in the hallway, screaming profanities and talking loudly on her cellular phone, that a teacher (not SRO Thomas) directed her to go into the satellite office. (Thomas Dep., R. 73-3, at Page ID # 717, ln. 16-25; Frank Dep. R. 73-5, Page ID # 888, ln. 20-23; Taylor Dep. Ex. 1, R. 73-7, Page ID # 1046). Derricka Heard ignored instructions to hang up her phone, and multiple witnesses confirmed that she was threatening SRO Thomas with bodily harm. (Frank Dep., R. 73-5, Page ID # 889, ln. 3; Page ID # 894, ln. 19-21; Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24; Taylor Dep. Ex. 1, R. 73-7, Page ID # 1046). To the extent SRO Thomas following Derricka Heard into the satellite office constitutes a seizure in this context, doing so was not unreasonable given Derricka Heard's non-compliant, threatening behavior.

To the extent this conduct was a seizure, it was also permissible in scope. "A seizure is 'permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure]…... in light of the age and sex of the student and the nature of the infraction.'" *Id*. at 685-686 (quoting *Couture*, 535 F.3d at 1253).

In response to Derricka Heard's refusal to comply with instructions and her escalating threats to "beat [SRO Thomas'] ass,"[7] SRO Thomas struck Derricka Heard once using a hard empty hand technique. (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11). She then contacted her supervisors and left the room. (Thomas Response to Interrogatory No. 6, R. 62-7, Page ID # 452.) The whole encounter lasted only seconds. (Frank Dep., R. 73-5, Page ID # 904, ln. 12 – Page ID # 905, ln. 2). SRO Thomas' conduct was clearly related to the objectives of the alleged seizure – restoring order in the school building and ensuring the safety of SRO Thomas as well as staff and students. Derricka Heard was fifteen years old at the time of the encounter and weighed substantially more than SRO Thomas. (D.H. Dep., R. 73-2, Page ID # 595, ln. 22-25; Ex. H. to SJ Motion, R. 64, Page ID # 525). Both SRO Thomas and Derricka Heard are female. Derricka Heard had been accused of assaulting another student and was actively threatening to assault SRO Thomas. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22). Thus, the measures SRO Thomas employed were reasonably related to the objectives of the alleged seizure. Any seizure was therefore permissible in scope and reasonable under the circumstances, and SRO Thomas did not violate Derricka Heard's rights under the

---

[7] Taylor Dep. Ex. 1, R. 73-7, Page ID #1046; Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24.

Fourth Amendment. SRO Thomas is entitled to qualified immunity, and Derricka Heard's claim for violation of the Fourth Amendment should be dismissed.

### B. Applying the Law Enforcement Standard, SRO Thomas Did Not Violate Derricka Heard's Fourth Amendment Rights.

To overcome SRO Thomas' qualified immunity defense as to her Fourth Amendment claim for excessive force, Derricka Heard must "'demonstrate that a hypothetical reasonable officer' would have 'known that [their] actions under the circumstances were objectively unreasonable.'" *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005) (quoting *Scott v. Clay Cnty.*, 205 F.3d 867, 877 (6th Cir. 2000)). "In making this evaluation, courts look at '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 575 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Officers "need not avail themselves of the least intrusive means of responding to an exigent situation; they need only act within that range of conduct we identify as reasonable." *Id.* at 576 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 575 (quoting *Graham*, 490 U.S. at 396). The Sixth Circuit has held that "these standards govern the use of

force by a police officer in the school setting." *E.W. v. Detroit Pub. Sch. Dist.*, No., 20-1790, 2022 WL 837496, at *3 (6th Cir. 2022).[8]

All three factors weigh in favor of SRO Thomas' qualified immunity. First, the undisputed material facts establish that SRO Thomas was told that Derricka Heard had committed an assault of another student. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22 ("Ms. Wilson stated that Ms. Heard had assaulted her.")). At that time, SRO Thomas did not know the severity of the alleged assault. To learn more, SRO Thomas attempted to engage Derricka Heard in a discussion about the allegations. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22). But Derricka Heard did not cooperate with SRO Thomas; instead, she defiantly walked away from SRO Thomas. (Thomas Dep., R. 73-3, Page ID # 717, ln. 16-25; Frank Dep., R. 73-5, Page ID # 888, ln. 20-23; Taylor Dep. Ex. 1, R. 73-7, Page ID # 1046). Though the specific details were unknown to SRO Thomas at the time, an alleged assault is sufficiently severe to justify SRO Thomas' efforts to engage Derricka Heard in a discussion about the allegations.

Additionally, the nature of the alleged crime – assault – buttresses the conclusion that Derricka Heard posed an immediate threat to the officer or others. After walking away from SRO Thomas, Derricka Heard began talking loudly on her

---

[8] In *E.W.*, the Sixth Circuit refers to the officer as a "Detroit Public School Officer" and a "school police officer." *Id.* at *1. The identity of the officer's employer is unknown.

cell phone and using profanity in the hallway. (Thomas Dep., R. 73-3, Page ID #

717, ln. 16-25; Frank Dep., R. 73-5, Page ID # 888, ln. 20-23; Taylor Dep. Ex. 1, R.

73-7. Page ID # 1046). She failed to obey school officials' repeated instructions to

put away her cellular phone. (Frank Dep., R. 73-5. Page ID # 889, ln. 3; Heard Dep.,

R. 73-4, Page ID # 817, ln. 12-13). Once in the satellite office, Derricka Heard was

screaming and holding her phone in the air. (D.H. Dep., R. 73-2, Page ID # 629, ln.

14 – Page ID # 630, ln. 21; Complaint, R. 1-1, Page ID # 10, ¶ 18). Multiple

witnesses confirm SRO Thomas' testimony that Derricka Heard made verbal threats

against SRO Thomas. (Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24; Frank Dep.,

R. 73-5, Page ID # 894, ln. 19-21; Taylor Dep. Ex. 1, R. 73-7. Page ID # 1046).

According to Derricka Heard's medical records, Derricka Heard weighed 110kg

(242.5 pounds) on March 26, 2019. (Ex. H. to SJ Motion, R. 64, Page ID # 525) By

contrast, SRO Thomas weighs only about 180 pounds (Thomas Interrogatory

Response No. 2, R. 62-7, Page ID # 450). Under these circumstances, a reasonable

officer would have concluded that Derricka Heard posed a threat to SRO Thomas

and to others. Consequently, the second factor weighs heavily in favor of qualified

immunity.

Finally, the undisputed material facts establish that Derricka Heard actively

attempted to evade SRO Thomas' questions and blatantly refused to comply with

instructions by SRO Thomas and school administrators. (Frank Dep., R. 73-5, Page

ID # 889, ln. 3; Thomas Dep., R. 73-3, at Page ID # 715, ln. 11-14; Page ID # 716, ln. 24 – Page ID # 717, ln. 5). Therefore, the third factor also weighs in favor of qualified immunity.

The undisputed material facts establish that a reasonable officer would not have known that their actions were unreasonable under the circumstances. Derricka Heard was accused of assaulting another student. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22). She refused to comply with instructions and threatened SRO Thomas with bodily harm. (Thomas Dep., R. 73-3, Page ID # 717, ln. 18-20; Page ID # 720, ln. 22-24; Frank Dep., R. 73-5, Page ID # 889, ln. 3; Page ID # 894, ln. 19-21; Taylor Dep. Ex. 1, R. 73-7, Page ID # 1046). In order to protect herself from Derricka Heard's disobedient and threatening behavior and gain control of the situation, SRO Thomas struck Derricka Heard one time. (Thomas Interrogatory Response No. 6, R. 62-7, Page ID # 452.) SRO Thomas immediately contacted her supervisors and left the room. (*Id.*) Her use of force was reasonable under the circumstances and did not violate Derricka Heard's Fourth Amendment rights. SRO Thomas is entitled to qualified immunity.

### C.   SRO Thomas Did Not Violate Derricka Heard's Fourteenth Amendment Rights.

Regardless of whether SRO Thomas is deemed to have acted as a law enforcement officer or school administrator during the events at issue in this case, SRO Thomas did not violated Derricka Heard's due process rights under the

Fourteenth Amendment. "The Due Process Clause of the Fourteenth Amendment protects individuals from the arbitrary actions of government employees, but 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'" *Gohl v. Livonia Public Schools School District*, 836 F.3d 672, 678 (6th Cir. 2016) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "The question is 'whether the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience.'" *Id.* (quoting *Webb v. McCullough*, 828 F.2d 1151, 1158 (6th Cir. 1987) (quoting *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980)); *see Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016)).

The Sixth Circuit has adopted the "'shocks the conscious' standard in public schools, asking four guiding questions: (1) 'Was there a pedagogical justification for the use of force?' (2) 'Was the force utilized excessive to meet the legitimate objective in this situation?' (3) 'Was the force applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm?' And (4) 'Was there a serious injury?'" *Id.* at 678-679 (quoting *Domingo v. Kowalski*, 810 F.3d 403, 411 (6th Cir. 2016)). Courts balance this non-exhaustive list of factors to evaluate a student's claim that a school administrator's

techniques violated the student's rights under the Fourteenth Amendment. *Domingo*, 810 F.3d at 411). It is not enough that a school official employs methods that are careless, unwise, inappropriate, or even abusive. A plaintiff "must identify conduct that is so brutal, demeaning, and harmful as literally to shock the conscience." *Id.* at 694 (quoting *Webb*, 828 F.2d at 1158).

In *Lillard v. Shelby County Bd. Of Educ.*, a high school science teacher and soccer coach was accused of detaining a 14-year-old student after class and abusing her verbally and physically. *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 719 (6th Cir. 1996). He "held her chin with one hand and slapped her across the face." *Id.* The court found that, "while the record fail[ed] to reflect any legitimate disciplinary purpose occasioning the slap . . . it is simply inconceivable that a single slap could shock the conscience." *Id.* at 725-726. The court said: "We do not quarrel with a suggestion that [the teacher's] actions were careless and unwise; but they fall far short of 'brutal' or 'inhumane,' or any of the other adjectives employed to describe an act so vicious as to constitute a violation of substantive due process." *Id.* at 726.

In *Domingo v. Kowalski*, a special education teacher was accused of abusing students with disabilities in a variety of ways. *Domingo v. Kowalski*, 810 F.3d 403 (6th Cir. 2016). On one occasion, the teacher gagged a nine-year-old student with a bandana and strapped him to a gurney in the hallway outside the classroom. *Id.* at

407. She was also accused of strapping a student with cerebral palsy, autism, and developmental delays to a training toilet alone in the restroom for twenty to thirty minutes at a time. *Id*. The Sixth Circuit affirmed the District Court's ruling that, though the teacher's techniques were inappropriate and even abusive, they "did not rise to the conscience-shocking level required of a substantive due process claim." *Id*. at 406.

As in *Lillard* and *Domingo*, SRO Thomas' conduct did not violate Derricka Heard's Fourteenth Amendment rights.

*First*, SRO Thomas had a pedagogical justification for her conduct – maintaining order and safety in the school building.[9] "[T]he issue is whether the teacher's allegedly unconstitutional conduct is properly '*construed* as an attempt to serve pedagogical objectives.'" *Id*. at 413 (quoting *Gottlieb v. Laurel Highlands Sch. Dist*., 272 F.3d 168 (3d Cir. 2001) (emphasis original)). The pedagogical purpose factor "looks to the ends motivating the teacher's actions and not the means undertaken to achieve those ends." *Domingo v. Kowalski*, 810 F.3d 403, 413 (6th Cir. 2016). Derricka Heard was accused of assaulting a fellow student. (Thomas Dep., R. 73-3, Page ID # 715, ln. 19-22). When Derricka Heard refused to cooperate with attempts to discuss the alleged assault, SRO Thomas directed her to the office

---

[9] Though the term "pedagogical" generally relates to teaching, such a rigid definition cannot fairly or rationally be applied to SRO Thomas, who is not a teacher and is not charged with teaching or educating students.

to see the assistant principal. (Thomas Dep., R. 73-3 at Page ID # 717, ln. 10-13). Derricka Heard then refused to comply with staff instructions, and threatened SRO Thomas with bodily harm. (Thomas Dep., R. 73-3, Page ID # 717, ln. 18-20; PageID # 720, ln. 22-24; Frank Dep., R. 73-5, Page ID # 889, ln. 3; PageID # 894, ln. 19-21; Taylor Dep. Ex. 1, R. 73-7, Page ID # 1046). In response to Derricka Heard's disruptive, noncompliant, and threatening behavior, SRO Thomas struck her once. (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11). The ends motivating SRO Thomas' actions were to restore order and prevent Derricka Heard from harming SRO Thomas or someone else. (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11, Page ID # 729, ln. 11-16; Page ID # 734, ln. 1-8). Her actions can clearly be construed as an attempt to serve pedagogical objectives, and this factor therefore weighs in favor of SRO Thomas' qualified immunity.

*Second*, SRO Thomas' use of force was not excessive under the circumstances. "[W]hen a teacher's allegedly unconstitutional conduct was motivated by a legitimate educational or disciplinary goal, the conduct must be clearly extreme and disproportionate to the need presented to be excessive in the constitutional sense." *Domingo*, 810 F.3d at 414 (quoting *Saylor v. Bd. of Educ. of Harlan Cty., Ky.*, 118 F.3d 507, 511 (6th Cir. 1997)). SRO Thomas did not employ a weapon or chemical agent; rather, in response to Derricka Heard's non-complaint and threatening behavior, SRO Thomas struck her one time using a closed empty

hand technique, which is relatively low on the applicable use of force continuum, and an appropriate level of force under the circumstances. (Thomas Dep., R. 73-3, Page ID # 723, ln. 4-11; Thomas Dep. Ex. 7, R. 73-3, Page ID # 777). Such conduct was not excessive, and this factor weighs in favor of SRO Thomas' qualified immunity.

*Third*, there is absolutely no evidence that SRO Thomas' conduct was malicious and sadistic for the very purpose of causing harm. To the contrary, SRO Thomas acted to restore order and to ensure the safety of herself and of students and staff. Even if SRO Thomas did not use good or even acceptable practices to accomplish these goals, that fact is simply insufficient to raise an inference that she undertook those practices with a malicious or sadistic intent. *See Domingo*, 840 F.3d at 415.

*Fourth*, Derricka Heard did not suffer serious injury. She received stitches in her lip but received no further medical care after the date of the incident. (Heard Dep., R. 73-4, Page ID # 808, ln. 15-24; Page ID # 818, ln. 17-23).

Though she alleges emotional injuries, she never visited a counselor or a psychologist or otherwise sought treatment for such injuries. (D.H. Dep., R. 73-2, Page ID # 642, ln. 21 – Page ID # 644, ln. 2; Heard Dep., R. 73-4, Page ID # 818, ln. 17 – Page ID # 819, ln. 21-24). Though she claims to have difficulty sleeping, the undisputed material facts establish that she never sought treatment for that issue

and that her sleep is allegedly improving. (D.H. Dep., R. 73-2, Page ID 647, ln. 21 – Page ID # 648, ln. 11). She is outgoing and loves joking and having fun. (Heard Dep., R. 73-4, Page ID # 791, ln. 22-25). She has taken the ACT and SAT and plans to attend college. (D.H. Dep. R. 73-2, at Page ID # 599, ln. 8 – Page ID # 600, ln 7).

Derricka Heard simply cannot meet the high burden of establishing that SRO Thomas violated her Fourteenth Amendment rights. SRO Thomas' conduct was not brutal, inhumane or motivated by malice or sadism. To the contrary, SRO Thomas sought to maintain order in the school building and to ensure the safety of herself and others. SRO Thomas is entitled to qualified immunity as to Derricka Heard's claim for violation of the Fourteenth Amendment.

## II.    DERRICKA HEARD CANNOT SHOW A CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT.

To overcome SRO Thomas' qualified immunity defense, Derricka Heard must establish that the law at the time of the incident clearly established that SRO Thomas' conduct would violate the Constitution. In other words, "qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Lyons v. City of Xenia*, 417 F.3d 565, 578-579 (6th Cir. 2005).

"When determining whether a right is 'clearly established,'" the Sixth Circuit Court of Appeals looks "first to decisions of the Supreme Court," then to its own decisions, "and finally to decisions of other circuits.'" *Beard v. Whitmore Lake School District*, 402 F.3d 598, 606-607(6th Cir. 2005) (quoting *McBride v. Village of Michiana*, 100 F.3d 457, 460 (6th Cir. 1996)). "In order for the law to be clearly established as of the date of the incident, the law must 'truly compel (not just suggest or allow or raise a question about), the conclusion that what defendant is doing violates federal law *in the circumstances*.'" *Id*. at 607 (quoting *Saylor v. Bd. of Educ*., 118 F.3d 507, 515–16 (6th Cir. 1997).

Derricka Heard cannot meet her burden to show that SRO Thomas was on notice that her conduct could have violated federal law because prior case law does not establish that SRO Thomas' conduct violated any provision of the Constitution. SRO Thomas was told by another student that Derricka Heard had assaulted her. (Thomas Dep., R. 73-3, Page ID # 715; ln. 19-22). SRO Thomas attempted to speak with Derricka Heard regarding the reported assault, but D.H. refused to cooperate. (*Id*. at Page ID # 715, ln. 19-22). Derricka Heard began using profanity and walked away from SRO Thomas who was attempting to discuss the incident with Derricka Heard (*Id*. at Page ID # 716, ln. 2 – Page ID # 717; ln. 5). SRO Thomas instructed Derricka Heard to go the office to see Principal Lowry. (*Id*. at Page ID # 717, ln. 6-16). Derricka Heard continued using profanity as she walked up the ramp

toward the office and did not obey SRO Thomas' instructions to stop using profanity. (*Id.* at Page ID # 717, ln. 16-24; Frank Dep., R. 73-5, Page ID # 888 ln. 20-23). While there are factual disputes as to exactly what happened in the office prior to SRO Thomas striking Derricka Heard, using an empty hard hand technique, SRO Thomas testified that she felt threatened by Derricka Heard and struck her in an effort to protect herself. (Thomas Dep., R. 73-3, Page ID # 722, ln 10 – Page ID # 723; ln. 3, Page ID # 735, ln. 1-8). Further, there is no genuine dispute that Derricka Heard made threats to SRO Thomas prior to being struck.[10] (Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24; Frank Dep., R. 73-5, Page ID # 894, ln. 19-21; Taylor Dep. Ex. 1, R. 73-7. Page ID # 1046).

The Supreme Court has instructed that the analysis of whether a right was clearly established "must be undertaken in light of the specific context of the case,

---

[10] Derricka Heard testified she did not say anything to SRO Thomas when in the satellite room and denies taking off her jean jacket. (D.H. Dep., R. 73-2, Page ID # 629, ln. 4 – Page ID # 630, ln. 21). However, two independent witnesses confirmed SRO Thomas' testimony that Derricka Heard made verbal threats to SRO Thomas and began taking off her jacket. Courts "view[] self-serving testimony opposing a motion for summary judgment with scrutiny when it is unsupported by additional evidence." *Johnson v. Buddy's Bar-B-Q*, No. 1:13-cv-254, 2015 WL 1954454, at *5 (E.D. Tenn. Apr. 29, 2015) (internal citations omitted); *see also Davis v. Gallagher*, 951 F.3d 743 (6th Cir. 2020) ("[W]here self-serving testimony is blatantly and demonstrably false, it understandably may not create a genuine issue of material fact, thereby allowing a court to grant summary judgment."). Whether the District Court properly assessed incontrovertible record evidence is a question of law proper for determination by this Court. *See e.g., Williams v. Morgan*, 652 Fed. Appx. 365, (6th Cir. 2016) (citing *Plumhoff v. Richard*, 572 U.S. 765 (2014).

35

not as a broad general proposition." *Beard*, 402 F.3d at 607 (quoting *Brosseau v. Haugen*, 543 U.S. 194 (2004)). "[C]ases 'cast at a high level of generality,' will only be sufficient to clearly establish the unlawfulness of the defendants' actions where the conduct at issue is 'obviously' a violation based on the prior cases." *Id*. (quoting *Brosseau*, 543 U.S. 194).

Derricka Heard has not and cannot identify case law clearly establishing that SRO Thomas striking Derricka Heard under these circumstances would violate her constitutional rights. Indeed, the two cases Derricka Heard relies upon involve the use of tasers on individuals who had not been accused of any wrongdoing. (Opp. to Motion for SJ, R. 73, Page ID # 564). In *Kijowski v. City of Niles*, the Court found that the officer "could not reasonably have believed that use of a Taser on a non-resistant subject was lawful." 372 Fed. Appx. 595, 601 (6th Cir. 2010). Similarly, the Court in *Goodwin v. City of Painesville* found that the plaintiff had clearly established constitutional right not to be tasered when he was either passively resisting or not resisting the officers. 781 F.3d 314, 329 (6th Cir. 2015). These cases apply only to the use of a dangerous weapon against a non-resisting individual and are not relevant here. The undisputed facts establish that SRO Thomas did not use a taser or any other weapon against Derricka Heard. To the contrary, she used a hard empty hand technique, an indisputably lesser force than a taser or other weapon.

(*See* Thomas Dep., R. 73-3, Page ID # 748; Cole Dep., R. 73-6, Page ID #s 940-941).

Further, unlike the plaintiffs in those cases, Derricka Heard was non-compliant and was actively resisting SRO Thomas' attempts to address the assault allegation raised by another student. *Supra* Statement of Facts. Derricka Heard's self-serving testimony that she did not threaten SRO Thomas is blatantly and demonstrably false and therefore cannot establish a genuine issue of material fact. *Supra*, FN. 9. Indeed, independent witnesses consistently testified that Derricka Heard verbally threatened SRO Thomas and started taking off her jacket. (Thomas Dep., R. 73-3, Page ID # 720, ln. 22-24) ("She started taking off her jacket and started telling me how she was going to whip my ass, she didn't give a damn about me being an officer in uniform."); (Frank Dep., R. 73-5, Page ID # 894, ln. 19-21) ("And Ms. Heard said, 'You better get out of my mother-fucking face before I forget you an adult.'"); (Taylor Dep. Ex. 1, R. 73-7. Page ID # 1046) ("The student called the police officer a bitch and said she was going to beat her ass. . . . The student took off her jacket and pointed in the officer's face.")

The District Court acknowledged Derricka Heard's failure to present relevant case law and did not itself identify any legal precedent on point. (SJ Order, R. 109, Page ID #s 1177-1178). Rather, the District Court erroneously declared that "analogous cases are not necessary where the Defendant engaged in conduct so

gratuitous that it puts the Defendant on notice about a potential violation of another person's clearly established constitutional rights." (*Id.* at Page ID # 1177) (citing *Williams v. Morgan*, 652 App'x 365, 375 (6th Cir. 2016).) While the *Williams* Court held that it is not always necessary to identify a "specific case on point," that case does not support a conclusion that a right can be clearly established without *any* relevant case law.  Indeed, the *Williams* Court cited precedent establishing "that the prohibition against gratuitous force was clearly established as of October 2010." *Id.* (citing *Norton v. Stille*, 526 Fed. Appx. 509, 513-14 (6th Cir. 2013)).   The "gratuitous" force at issue in *Williams* was an arm restraint applied to a 13-year old student with such force that her arm was broken. *Id.* at 367. Though the student was allegedly "enraged" at some point, the officer did not employ force in an immediate response to her behavior.   *Id.* Rather, he confronted her "later in the day" in a stairwell and applied bone-breaking force because he decided the way she was standing was "defiant." *Id.*  The court found that the law established that it would be improper for the officer to:

> accost a 13-year-old girl, without provocation or resistance, use his size advantage to place her physically against a wall, verbally menace or threaten her while he twisted her arm behind her back and lifted her off the floor until he broke that arm; and then maintain pressure on that broken arm, despite her pleas for relief, as he forced her down the hall to the principal's office with further verbal threats.

*Id.* at 375. Thus, the *Williams* Court found that the officer's use of bone-breaking force on a non-threatening child in response to what the officer perceived as a "defiant" stance was so gratuitous that there was no need for a specific case on point. *Id*. Such finding clearly did not put SRO Thomas on notice that own her conduct, occurring in the heat of the moment and in response to Derricka Heard's alleged assault of another student and ongoing threatening behavior toward SRO Thomas, would violate Derricka Heard's constitutional rights.

The gratuitous force at issue in *Norton v. Stille* is similarly distinguishable from the reasonable force applied by SRO Thomas.  That case involved an officer booking a disabled fifty-eight-year-old woman on a "four-wheel handicap scooter" because she could not pay a $150 fine assessed for missing jury selection in a misdemeanor trespass case against her.  526 Fed. Appx. 509, 510 (6th Cir. 2013). When the woman picked up a tissue and a bottle of water without the officer's permission, he "broke [her] arm by pushing her up against a wall, and then broke it again by taking her down to the floor."  *Id*. at 513, 514.  Though it did not specifically rely on a factually similar case, the court cited opinions by this Court and the United States Supreme Court in support of the proposition that officers may not use force on a detainee who is subdued and controlled and who does not pose a safety risk to the officer. *Id*. at 513.  Relying on those cases, the *Norton* court found "it was clearly

39

established law at the time of the incident that applying force to an incapacitated, subdued detainee was excessive." *Id*. at 514.

Existing case law at the time of the altercation between SRO Thomas and Derricka Heard clearly established that an officer cannot lawfully employ force against a compliant, non-threatening detainee, but that does not control the outcome here. Derricka Heard was neither compliant nor non-threatening. To the contrary, the undisputed facts establish that Derricka Heard failed to comply with SRO Thomas' instructions and exhibited threatening behavior toward SRO Thomas, including blatantly threatening her with bodily harm. (Thomas Dep., R. 73-3, Page ID # 717, ln. 18-20; Page ID # 720, ln. 22-24; Frank Dep., R. 73-5, Page ID # 889, ln. 3; Page ID # 894, ln. 19-21; Taylor Dep. Ex. 1, R. 73-7. Page ID # 1046). Case law addressing gratuitous force against compliant and non-threatening students or detainees are inapposite. SRO Thomas did not use gratuitous force. She used reasonable force in an attempt to subdue an insubordinate high school student threatening her with physical violence. Neither the parties nor the District Court have identified case law which could possibly put SRO Thomas on notice that her conduct under these circumstances would violate Derricka Heard's constitutional rights.

## CONCLUSION

For the reasons explained herein, SRO Thomas is entitled to qualified immunity as to Derricka Heard's claims for violation of her Fourth and Fourteenth

Amendment rights.   Consequently, the District Court's order denying summary judgment as to those claims should be overturned, and summary judgment should be entered in favor of SRO Thomas.

Respectfully submitted,

/s/ Jamie L. Morton
JAMIE L. MORTON (#031243)
Shelby County Board of Education
Office of the General Counsel
160 S. Hollywood St., Room 218
Memphis, Tennessee 38112
901.416.3612
mortonj2@scsk12.org

/s/ Randy K. Jones
RANDY K. JONES (SBN 141711)
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
3580 Carmel Mountain Rd, Suite 300
San Diego, CA 92130
RKJones@mintz.com

/s/ Whitney Costin
WHITNEY COSTIN
Mintz Levin Cohn Ferris Glovsky and Popeo, P.C.
666 Third Avenue
New York, NY 10017
212-692-6256
WMCostin@mintz.com

## CERTIFICATE OF COMPLIANCE

### Form 6. Certificate of Compliance With Type-Volume Limit

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements.

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    a.   This document contains 9806 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: a. This document has been prepared in a proportionally spaced typeface using Times New Roman 14 point in Microsoft Word for Office 365.

/s/ Jamie L. Morton
Attorney for Defendant-Appellant, Monique Thomas

Dated: October 11, 2022

42

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing Brief of Appellant was served via the Court's CM/ECF system on October 11, 2022 upon:

James E. King, Jr., Esq.
Eskins, King & Marney PC
200 Jefferson, Suite 1510
Memphis, TN 38103
jking@eskinsking.com

*Counsel for Plaintiff*

/s/ Jamie L. Morton
Jamie L. Morton

Dated:  October 11, 2022

43

**ADDENDUM**

**Designation of Relevant Lower Court Documents**

| District Court's Document Number | Description | District Court's Page ID # |
|---|---|---|
| 1 | Notice of Removal | 1-5 |
| 1-1 | Complaint | 6-15 |
| 1-2 | Summons | 16-20 |
| 6, 6-1 | Motion to Dismiss | 28-46 |
| 8 | Motion to Amend Complaint | 55-59 |
| 13 | Order Granting Motion to Dismiss | 90-101 |
| 14 | Judgment of Dismissal | 102 |
| 39 | Summons to Monique Thomas | 208-209 |
| 43 | Setting Letter | 226-229 |
| 62 | Motion for Summary Judgment | 371 - 374 |
| 62-1 | Memorandum of Law in Support of Defendant's Motion for Summary Judgment | 375 - 396 |
| 62-7 | Thomas Response to Interrogatory No. 6 | 448-458 |
| 73 | Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment | 550- 570 |
| 73-2 | Deposition of Derricka Heard | 587-684 |
| 73-3 | Deposition of Monique Thomas | 685-780 |
| 73-3 | Ex. 7 to Deposition of Monique Thomas | 777 |
| 73-4 | Deposition of April Heard | 781-856 |
| 73-5 | Deposition of Charles Frank | 857-922 |

| District Court's Document Number | Description | District Court's Page ID # |
|---|---|---|
| 73-6 | Deposition of Steven Cole | 923-1030 |
| 73-7 | Deposition of Meridth Taylor | 1031-1047 |
| 73-7 | Ex. 1 to Deposition of Meridth Taylor | 1046 |
| 90 | Defendant's Motion to Remove April Heard as Parent and Next Friend or, in the Alternative, Motion to Dismiss Complaint for Failure to Prosecute Under Name of Real Party in Interest | 1088 - 1091 |
| 97 | Plaintiffs' Response to Defendant's Motion and Memorandum of [Law] to Remove April Heard as Parent and Next Friend or, in the Alternative, Motion to Dismiss for Failure to Prosecute Claims in the Name of the Real Party in Interest | 1116 - 1119 |
| 100 | Plaintiffs' Unopposed Motion to Continue Trial and Stay All Remaining Deadlines | 1128 - 1129 |
| 103 | Second Setting Letter | 1138 - 1141 |
| 105 | Order Granting Defendant's Motion to Remove April Heard as Parent and Next Friend | 1142 - 1147 |
| 109 | Order Granting in Part and Denying in Part | 1154 - 1181 |

| District Court's Document Number | Description | District Court's Page ID # |
|---|---|---|
| | Defendant's Motion for Summary Judgment | |
| 113 | Motion to Stay | 1224 - 1226 |
| 117 | Joint Motion to Continue Trial | 1256 - 1257 |
| 119 | Order Granting Parties' Motions to Stay Proceeding Pending Appeal and Denying Plaintiffs' Motion for Certificate of Appealability | 1258 |